| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** <br> LIPPES MATHIAS, LLP <br> Joann Sternheimer, Esq. <br> 54 State Street, Suite 1001 <br> Albany, New York 12207 <br> Tel.: (518) 462-0110 <br> Email: jsternheimer@lippes.com <br> *Attorneys for Universal Finance Corp.* | |
| In Re: <br><br> JAMES PINE & SON TRUCKING LLC, <br><br> Debtor. | Chapter 11 (Subchapter V) <br><br> Case No.: 23-19461 (JNP) <br><br> Honorable Jerrold N. Poslusny Jr. |

**MEMORANDUM OF LAW**

## I.  INTRODUCTION

This Memorandum of Law is submitted in support of Universal Finance Corp.'s ("Universal") position that a 2016 Peterbilt Model 367 Tri Axle Dump Truck and a 1988 Mack R688 ST Truck (the "Retained Trucks") should be valued at fair market value in connection with establishing the extent of Universal's secured claim under the anticipated amended plan of reorganization of James Pine & Son Trucking, LLC (the "Debtor"). At a status conference held on August 20, 2024, the Debtor advised that it would be filing an amended plan of reorganization under which the Debtor will retain the Retained Trucks and pay their value to Universal over time with interest. In advance of the Debtor's filing of its amended plan, the Court requested that the parties submit memoranda of law regarding the proper valuation method to be used under these new circumstances. For all the reasons set forth herein, Universal respectfully submits that the Court should value the Retained Trucks at their fair market value.

## II.     PROCEDURAL HISTORY

The Debtor filed its Chapter 11 petition on October 26, 2023. On December 22, 2023, Universal filed a Motion for Relief From the Automatic Stay (the "Stay Relief Motion") seeking to proceed with a pending state court action to recover 11 pieces of equipment securing the debt owed to Universal (the "Equipment"). (See Doc. No. 28). [1]

At a chambers conference held in connection with the Stay Relief Motion, Debtor's counsel advised that the Debtor would propose a plan to return certain equipment to Universal as the indubitable equivalent and in full satisfaction of Universal's claim. (See also Doc. No. 37 at pp. 7-8). Anticipating the plan outlined by Debtor's counsel, both parties obtained appraisals of the Equipment.

On January 18, 2024, due to the Debtor's inability to provide insurance on the Equipment, the court granted Universal's Stay Relief Motion. Days later on January 22, 2024, the Debtor filed a motion to vacate the order granting Universal's Stay Relief Motion (the "Motion to Vacate") and objected to Universal's claim. (See Doc. No. 49). The Debtor attached to its Motion to Vacate, the "Appraisal Report (Forced Liquidation Value)" of A. Atkins Appraisal Corporation (the "Atkins Appraisal") obtained by Universal. (See Doc. No. 49-4). The Debtor also attached the Debtor's "Fair Market Value Appraisal" prepared by Lee M. Fox, LLC, (the "Fox Appraisal"). (See Doc. No. 49-5). The Fox Appraisal states at page 1 that:

> Fair Market Value is defined as the [price] at which the property will change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having knowledge of relevant facts. (See Doc. No. 49-5 at p. 2).

---

[1] Universal Repossessed one unit prepetition. Therefore, only 10 pieces of equipment are relevant to this case.

The Fox Appraisal estimated the 2016 Peterbilt's fair market value at $139,000.00 and the 1988 Mack's value at $1,400.00. (See Doc. No. 49-5 at p. 4).

On January 24, 2024, the Debtor filed its Chapter 11 Small Business Subchapter V Plan (the "Plan") seeking to return all of the Equipment except the Retained Trucks to Universal as the indubitable equivalent and in full satisfaction of Universal's claim. (See Doc. No. 54 at p. 12).

On February 5, 2024, the Cout granted the Debtor's Motion to Vacate with respect to the 1988 Mack and ordered that the automatic stay would be reimposed on the 2016 Peterbilt upon Debtor's providing proof of insurance. As part of its Order, the Court required the Debtor to surrender the other 8 pieces of equipment (the "Surrendered Equipment") to Universal. (See Doc. No. 62). A valuation hearing was scheduled for March 18, 2024, to determine whether, as proposed in the original plan, the value of the Surrendered Equipment provided Universal provided Universal with the indubitable equivalent of its claim. That hearing was repeatedly adjourned for, among other reasons, settlement conferences between the parties. Universal has since liquidated all of the Surrendered Equipment in a commercially reasonable manner for a total of $121,550.00, far less than the amount of Universal's claim. (See the accompanying Affidavit of Scott Worth dated September 6, 2024 (the "Worth Affidavit") at ¶4.

On August 20, 2024, the Court conducted a status conference at which the Debtor announced that it would file an amended plan under which it will propose to keep and use the Retained Trucks in its business and pay their value to Universal over time. The Court has requested that the parties advise the Court of the proper method to be used in arriving at such value.

III. **LEGAL ARGUMENT**
IV.
**THE RETAINED TRUCKS SHOULD BE VALUED AT FAIR MARKET VALUE**

Section 506(a) of the Bankruptcy Code provides, in relevant part:

3

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value **shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property** ....

11 U.S.C. § 506(a)(1)(emphasis added). The statute does not specify the appropriate valuation standard, leaving that determination to the courts. In re Heritage Highgate, Inc., 679 F.3d 132, 141 (3d Cir. 2012).

The United States Supreme Court and the Third Circuit Court of Appeals have clearly stated that the "value" referred to in Section 506(a)(1) of property to be retained by a debtor through its plan of reorganization is the collateral's replacement value and that replacement value equals fair market value Id; In Associates Commercial Corp. v. Rash, 520 U.S. 953, 962, 117 S. Ct. 1879, 1885, 138 L. Ed. 2d 148, 158 (1997). The debtor in Rash sought to retain a truck to generate future income and proposed to pay the secured creditor the liquidation value of its collateral. Rash, 520 U.S. at 957. The creditor argued that the truck's value should be determined based on what the debtor would need to pay to purchase a comparable vehicle. Id. "[T]he value of the property (and thus the amount of the secured claim under § 506(a)) is the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller." Id. at 960. The court went on to hold that the collateral's proposed disposition or use was of "paramount importance" in determining its value. The Court further held that the replacement value better accounted for the reality that the debtor intended to use the truck and pay the creditor over time, rather than surrender it and liquidate it – a hypothetical not contemplated by the plan. Id. at 963. The Supreme Court also made clear that it equates replacement value with fair market value, i.e., the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition. Id. at 959, n.2.63.

Although Rash was a chapter 13 case, courts in this circuit have applied its teachings in the chapter 11 context. Heritage Highgate, 679 F.3d at 141; In re Museum of Am. Jewish Hist., No. BR 20-11285-MDC, 2020 WL 7786925, at *17 (Bankr. E.D. Pa. Dec. 4, 2020), aff'd, No. CV 20-6341, 2021 WL 1264160 (E.D. Pa. Apr. 6, 2021); In re Buena Vista Oceanside, LLC, 479 B.R. 342, 346 (Bankr. W.D. Pa. 2012)

Likewise, the Third Circuit Court of Appeals has held that property to be retained by a debtor should be valued under 506(a) at its fair market value as of the confirmation date. Heritage Highgate, 679 F.3d at 143. Citing Rash, the Third Circuit court said, "the proposed disposition or use of the collateral is of paramount importance to the valuation question." Id. at 141. (quoting Rash, 520 U.S. at 962). The Third Circuit court reasoned that if the "proposed disposition or use" language in § 506(a) is to be afforded any meaning, "the appropriate standard for valuing collateral must depend upon what is to be done with the property – whether it is to be liquidated, surrendered, or retained by the debtor." Heritage Highgate, 679 F.3d at 141. The Heritage Highgate court also highlighted that in Rash, the Supreme Court equated replacement value with fair market value, concluding that "[t]he proper measure under § 506(a) must therefore be the collateral's fair market value because it is most respectful of the property's anticipated use." Id. at 142.

In this case, the Debtor, like the Rashes, proposes to keep the Retained Trucks to generate income in its reorganized business. Applying controlling precedent, it is clear that the Retained Trucks should be valued at their fair market value. While the Court has not asked the parties to advise what the actual value of the Retained Trucks is, Universal anticipates that the Debtor will argue that the Retained Trucks should be assigned the values in the Atkin's appraisal obtained by Universal. That argument flies in the face of settled law. The Atkins Appraisal specifically states that it is a liquidation value appraisal. It was obtained for a different valuation for a different

5

reason, i.e. what is the value of the Equipment to Universal under a former plan that proposed to give Universal certain collateral in satisfaction of its claim. Universal is not a hauling company or fleet operator. It is not in the business of using equipment to generate revenue. It is not an equipment dealer. Instead, it is a Lender who is sometimes placed in the unfortunate position of having to liquidate collateral securing defaulted loans. In that instance, under the original plan, the value at issue was the value of the Equipment to Universal – liquidation value.[2] Now, under the proposed amended plan, the relevant value is the value to the Debtor, who proposes to use the Retained Equipment to generate income. Under those circumstances and controlling law, the appropriate valuation method is fair market value. The Debtor's fair market value appraisal estimated the value of the Retained Trucks at $139,000.00 for the 2016 Peterbilt and $1,400.00 for the 1988 Mack.[3]

---

[2] Comparing the Atkins Appraisal to the Worth Affidavit, Universal obtained something approximating liquidation value in all but two sales.

[3] If the parties are unable to resolve the issues between them consensually, Universal will obtain an updated fair market value appraisal.

**CONCLUSION**

For all of the foregoing reasons and authorities, Universal Finance Corp. Respectfully requests that the Court enter an Order holding that the Retained Trucks shall be valued at fair market value for purposes of Debtor's anticipated amended plan.

Dated: September 6, 2024

                **LIPPES MATHIAS, LLP**

                **/s/ Joann Sternheimer, Esq.**
                Joann Sternheimer, Esq. (ID No. 014181993)
                *Attorneys for Universal Finance Corp.*
                54 State Street, Suite 1001
                Albany, New York 12207
                Tel.: (518) 462-0110
                Email: jsternheimer@lippes.com