UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:

JAMES PINE & SON TRUCKING LLC,

Debtor.

Case No. 23-19461 (JNP)

Chapter 11

## MEMORANDUM DECISION ON VALUE OF PROPERTY

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

James Pine & Son Trucking LLC (the "Debtor") initially filed a motion objecting to the claim of Universal Finance Corp. ("Universal") and a motion to vacate an order granting stay relief to Universal. Over time the issues in those motions evolved into a question of the proper method to value an asset in the context of the Debtor's Subchapter V plan (the "Plan"). For the reasons discussed below, the Court finds that the proper valuation method is "replacement" value because the Debtor intends to retain the property under the Plan.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (L).

### Background

The Debtor entered into a commercial equipment finance agreement (the "CEFA") with Universal on March 7, 2023, to refinance certain equipment. Dkt. No. 28. Universal took a security interest in the equipment, including a 2016 Peterbilt Model 367 Tri-Axle Dump Truck (the "Truck"), and the Debtor later defaulted under the terms of the CEFA. Id.

The Debtor filed a petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on October 26, 2023 (the "Petition Date"). Dkt. No. 1. The Debtor

qualified as a small business debtor and elected to proceed under Subchapter V of Chapter 11. See 11 U.S.C. § 103(i). The Plan calls for the Debtor to retain the Truck and continue as a going concern. Dkt. No. 54. Universal filed claim number 8 (the "Claim") in the amount of $353,961.10 and is secured up to the value of the equipment, which the Claim asserts is $276,795. Claim No. 8.

Universal filed a motion for relief to pursue state law remedies as to all of the equipment covered in the CEFA, including the Truck. Dkt. No. 28. The motion was initially granted, and the Debtor then filed a motion to vacate the stay relief order. Dkt. No. 49. Following several additional filings, the Court entered an order which permitted Universal to repossess and sell all of the equipment covered in the CEFA, except the Truck and a second piece of equipment of negligible value.[1] Dkt. No. 62. The Debtor objected to the Claim (the "Claim Objection"), specifically challenging the total amount of the claim, and the portion of the claim that is treated as secured. Dkt. No. 49. Because Universal repossessed and sold all of the remaining equipment, the secured portion of the remaining Claim is limited to the Truck's value. Hearings or status conferences were held on January 25, April 16, and August 25, at which the parties agreed that the value of the Truck is essential to ruling on the Claim Objection, as well as being a key factor in determining the feasibility of the Plan. However, the parties dispute the proper method by which to value the Truck. See April 16 Hearing (the "April HRG."). A valuation hearing is scheduled for October 31, and the parties both submitted briefs arguing for their preferred valuation method. This Decision addresses valuation to limit the issues at that hearing. Dkt. Nos. 75, 76, 78. Universal argues that because the Debtor intends to keep the Truck and use it in its business, the Court should determine its fair market value or replacement value. In contrast, the Debtor argues that the liquidation value is the proper method. Dkt. Nos. 75, 78.

---

[1] The second piece of equipment – a 1988 Mack Model R688OST – is not relevant to this decision.

## Discussion

Section 506(a) describes the extent of a secured claim as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. <u>Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . .</u>

In re Heritage Highgate, Inc., 679 F.3d 132, 140 (3d Cir. 2012) (emphasis added) (quoting 11 U.S.C. § 506(a)). Though the statute requires that collateral be valued, it does not specify the appropriate valuation standard. Id. at 141. Instead, courts are expected to determine the value noting that "the 'proposed disposition or use' of the collateral is of paramount importance to the valuation question." Id. (quoting Assocs. Com. Corp. v. Rash, 520 U.S. 953, 962 (1997)). Therefore, "the appropriate standard for valuing collateral must depend upon what is to be done with the property – whether it is to be liquidated, surrendered, or retained by the debtor." Id.

In this case, the Plan calls for the Debtor to retain the Truck and to use it to generate income through its business. Dkt. No. 54. In Heritage Highgate the Third Circuit considered the appropriate valuation method for collateral when a Chapter 11 debtor elects to use that collateral to generate an income stream, ruling that in such circumstances "a § 506(a) valuation based upon a hypothetical foreclosure sale would not be appropriate." Id. at 142. Rather, "the present value of the income stream would [instead] be equal to the collateral's fair market value." Id. (quoting Winthrop Old Farm Nurseries v. New Bedford Inst. for Sav. (In re Winthrop Old Farm Nurseries), 50 F.3d 72, 75 (1st Cir. 1995)). In other words, in Chapter 11 reorganizations, if the debtor intends to retain the collateral and use it to generate income, the proper valuation method is the replacement value. See id.

3

The Debtor argues that this analysis should be altered because this is a Subchapter V case. Dkt. Nos. 75, 78. The Debtor begins by noting that section 1181 of the Bankruptcy Code specifies which sections of the Bankruptcy Code are not applicable in Subchapter V cases, and because section 1129(a)(7) is not listed, it applies in Subchapter V cases. Dkt. No. 75. Next, the Debtor argues that section 1191(c) requires a Court to confirm a plan if it is fair and equitable, and meets the requirements of section 1129, with certain exceptions not applicable here. Dkt. No. 78. Section 1129(b)(2)(A) requires that the holders of secured claims retain the liens securing their claim and receive payments totaling at least the allowed amount of such claims. 11 U.S.C. § 1129(b)(2)(A). Finally, the Debtor argues that section 1129(a)(7) requires a secured creditor receive at least what it would through a Chapter 7 liquidation for a plan to be fair and equitable. Dkt. No. 78.

Based on this, the Debtor appears to argue that the analysis to determine whether a plan is fair and equitable is different in a Subchapter V case than in a "standard" Chapter 11, and therefore Heritage Highgate does not apply. See id. The Debtor further argues that value of the collateral discussed in section 1129(b)(2)(A) is automatically equated to the minimum payments required under the best interest of creditors test discussed in section 1129(a)(7). However, the Court does not find this argument persuasive. The Debtor cited no caselaw to support this argument, nor does the Court's analysis of the Bankruptcy Code.

The Court begins with section 1191(c) which states that a plan is fair and equitable with respect to a secured creditor if the requirements of section 1129(b)(2)(A) are met. 11 U.S.C. § 1191(c). Section 1129(b)(2)(A) in turn requires that the holders of secured claims receive payments equal to the value of their secured claim (i.e. the value of their collateral). 11 U.S.C. § 1129(b)(2)(A). However, Section 1129 does not discuss how to determine the value of that collateral, for that, the Bankruptcy Code requires the Court to look to section 506(a). See In re Philadelphia Newspapers, LLC, 599 F.3d 298, 316 (3d Cir. 2010), as amended (May 7, 2010)

4

("1129(b)(2)(A)(i)(I) still caps the transferred lien at the value of the lender's allowed secured claim, as established by judicial valuation under § 506(a)") (emphasis added); In re Body Transit, Inc., 619 B.R. 816, 832 (Bankr. E.D. Pa. 2020) (section 1129 mandates that a plan pay the creditor the present value only on the amount that would have been allowed as the secured claim under section 506(a)). In other words, for a plan to be fair and equitable, a secured creditor must receive the value of its collateral under section 1129(b)(2)(A), and the value of that collateral is determined under section 506. Finally, Heritage Highgate requires that the valuation under section 506(a) be based on the proposed use of the collateral, and that where the collateral is to be retained to generate an income stream, it should be its fair market or replacement value. 679 F.3d at 141. The Debtor offers no argument why the valuation standards under section 506 are not appropriate in a Subchapter V case, and the Court is not aware of any. Therefore, Heritage Highgate controls in Subchapter V cases, and the replacement value is the appropriate method to determine the value of the Truck. 679 F.3d 132.

### Conclusion

Because Heritage Highgate applies in Subchapter V cases, the value of collateral is evaluated in the context of the Debtor's intended use of that collateral. Because the Debtor intends to retain the collateral and use it to generate an income stream, the fair market value, or replacement value, is the appropriate method in this case and is the valuation method the Court will consider at the October 31 hearing.

Dated: September 27, 2024

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE

5